IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT DECKER, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>ALLIANT TECHNOLOGIES, :<br>:<br>Defendant. :<br>: | Civil Action No.: 5:08-cv-05133 (TMG) |

### DEFENDANT ALLIANT TECHNOLOGIES' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Alliant Technologies, by and through its counsel, The Sattiraju Law Firm, P.C., respectfully moves before this Honorable Court for leave to submit this reply brief in support of its Motion for Summary Judgment. Plaintiff, Robert Decker's failure to respond to Defendant's Statement of Undisputed Materials Facts requires that his opposition be stricken under the specific terms of the Court's Second Amended Scheduling Order. Regardless, Plaintiff's submission provides no valid opposition to Defendant's Motion for Summary Judgment. Indeed, Plaintiff did not even dispute the most important aspects of Defendant's Motion. Plaintiff instead proffered wholly unrelated arguments and precedent that do not alter the fact that Plaintiff does not have a sustainable cause of action. As such, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

1. **Plaintiff's opposition should be disregarded as he failed to comply with the Court's Second Amended Scheduling Order.**

Plaintiff's opposition to Defendant's Motion for Summary Judgment did not contain a response admitting or denying each numbered paragraph in Defendant's Statement of

1

Undisputed Material Facts ("DSMF ¶__").  Page 2 of the Court's Second Amended Scheduling Order states that "failure of the responding party to comply will result in the Court's consideration of the motion as uncontested."  See Enters v. AT&T, No. Civ. A 98-CV-3660, 2005 WL 3988698 (D.N.J. 2005)("scheduling orders are binding on the litigants unless modified by subsequent order"); Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912 (3d Cir. 1992); Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co., 843 F.2d 683, 696 (3d Cir. 1988); Hill v. Algor, 85 F.Supp.2d 391, 408 n.26 (D.N.J. 2000)("facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted").  In light of this precedent, and the Court's explicit instructions, Plaintiff's opposition should be stricken.

2. **Plaintiff cannot establish that he had an ADA disability at the time of his termination and purported accommodation request.**

As set forth in Defendants' moving papers, Plaintiff cannot articulate a *prima facie* case of disability discrimination because he did not have an ADA disability at the time of his termination.  Plaintiff's opposition ignores the controlling Supreme Court precedent of Sutton v. United Airlines, Inc., 527 U.S. 471, 482-83 (1999), in which the Court held that:

> [I]f a person is taking measures to correct, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the [ADA]....**To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.**

(Emphasis Added).  Plaintiff did not dispute (and therefore admitted) that from late 2005, when Plaintiff notified his supervisors, Messrs. McKinney and Montone, that his medication was effectively treating his condition, Plaintiff did not feel he needed any accommodation in order to do his job (DSMF ¶ 13).  Plaintiff's own testimony demonstrates that his medication fully treated

2

his conditions.  Under Sutton, given the success of his medication, Plaintiff's condition was not a disability under the ADA, and his entire Complaint should be dismissed.

As noted above, Plaintiff's opposition does not even address the Sutton decision.  Rather, Plaintiff engages in a lengthy (yet irrelevant) dissertation on whether Attention Deficit Disorder and Bi-Polar are disabilities under the ADA, and impact major life activities.  The precedent cited by Plaintiff could only be applicable when the condition is not being treated effectively by medication as in the matter before this Court.  Plaintiff also repeatedly and incorrectly states (with no authority) that the Court may consider the amendments to the ADA notwithstanding the extensive precedent cited in Defendant's moving papers (page 5, fn 2), which holds that Sutton governs this matter.

Moreover, Plaintiff's argument that he was perceived as having a disability is without merit.  Plaintiff admitted that he only notified Defendant of his conditions when notifying them that they were being fully treated and that he did not need an accommodation (DSMF ¶ 11-14). At best, Plaintiff attempts to incorrectly imply that Defendant's knowledge that Plaintiff had a condition that required treatment established that Defendant regarded him as disabled.  As noted in Defendant's moving papers, the Third Circuit has expressly rejected this argument.  See Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)("The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action").

For the reasons set forth above, and in its moving papers, Defendant respectfully submits that Plaintiff's argument that he was disabled or regarded as disabled is without merit, and Defendant is thus entitled to summary judgment on all claims.

### 3. Plaintiff cannot establish that his disability caused his termination or that Defendant's reason for terminating him was pretextual.

As set forth in Defendant's moving papers, assuming arguendo that Plaintiff had an ADA disability (which he did not), Plaintiff admitted that he has no basis whatsoever to speculate as to the reason for his termination, and even declined to speculate that the reason was discriminatory. At his deposition, Plaintiff testified:

> Q: So you don't know why they made the decision to terminate you?
> A: I have no idea, no idea.
>
> Q: Now, I understand that … people have intuition, you have ideas in terms of why something may happen. Is it your intuition or your belief that your termination was because of your disability?
> A: I don't know why they did it. I have no idea.
>
> Q: So you don't know what the reason was, if it was disability or it was a mistake or what it was?
> A: I have no idea.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Q: So you don't know why any of these decisions up until your last day were made?
> A: Just theories. I have no idea why.

(DSMF ¶ 33).

In his opposition, Plaintiff does not even attempt to explain or refute this testimony, which eviscerates his claims. Nor does Plaintiff address the precedent cited in Defendant's moving papers on pp. 8-9 that "intuition" or baseless speculation cannot supply evidence needed to defeat summary judgment, or on p. 11 that an employee's subjective opinion of his own performance or abilities on whether a decision was "fair" cannot create a genuine issue of material fact on the issue of pretext.

Plaintiff unconvincingly cites Defendant placing him on a personal improvement plan over one month after his disclosure of his improved medical condition as evidence of

4

discriminatory motive and pretext.  However, Plaintiff conveniently ignores the fact that he testified that his performance merited placement on the performance improvement plan.  As an Account Manager, Plaintiff was expected to produce a certain level of gross profits per month (DSMF ¶15).  Plaintiff did not have one month in which he met his monthly gross profit target from January 2005 to February 2006 (DSMF ¶16).  On or about February 6, 2006, Plaintiff was given a Performance Plan by Defendant (DSMF ¶17).  Plaintiff admitted that his performance warranted him being placed on the Performance Plan (DSMF ¶18).  Plaintiff did not disagree with anything in the Performance Plan, and did not feel it was unreasonable (DSMF ¶19).   In light of his admitted poor performance, Plaintiff cannot establish that his placement on a performance plan is evidence of discriminatory causation or pretext.

Plaintiff also cites the mere timing of his placement on a performance improvement plan 1.5 months after he notified his supervisors that his medication corrected his conditions.  Aside from the fact that notifying his supervisors of a corrected condition is not protected activity, mere timing alone is not sufficient to establish causation for a *prima facie* case or pretext.  <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1302 (3d Cir. 1997)(the mere fact that adverse employment action occurs after a protected activity insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events); <u>Merit v. Se. Pa. Transp. Authority</u>, 315 F.Supp.2d 689, 707 (E.D.Pa. 2004) (several week period between complaint and adverse action not usually suggestive of retaliatory motive for *prima facie* case); <u>Adams v. Commw. of Pa.</u>, No. Civ.A. 03-1994, 2005 WL 851339, at *6 (E.D.Pa. April 8, 2005) (temporal proximity of six weeks alone insufficient to establish "causal link" necessary to establish *prima facie* case of retaliation).

Left with no alternative, Plaintiff also relies upon wholly inapplicable precedent. For example, Bevan v. Honeywell, Inc., 118 F.3d 603 (8th Cir. 1997) involved an employee with a history of favorable performance ratings, which is inapposite to our case given that Plaintiff had admitted, long-standing performance failures. Plaintiff's reliance on cases involving employers failing to follow progressive discipline also has no application in this matter. In Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 80 (3d Cir. 1983), an employee was terminated even though company policy was that employees must be suspended before termination. Similarly, Sylvester v. Callon Energy Services, Inc., 781 F.2d 520 (3d Cir. 1983) involved an employee terminated on a 90-day termination period. No such factors are present in this case.

Plaintiff conveniently neglects to mention that he was an at-will employee, and that he had no such protections preventing his termination. At his deposition, Plaintiff admitted that he signed an Employee Acknowledgement form on July 12, 2004, and understood that he was an at-will employee who could be terminated for any reason (DSMF ¶4). The Employee Acknowledgment signed by Plaintiff states, in part, that:

> I also understand and agree that my employment is for no definite period and may, regardless of the time and manner of payment of my wages and salary, be terminated at any time by Alliant Technologies or me, with or without cause, and without any prior notice.
>
> I also understand that no representative of Alliant Technologies other than the President, has authority to enter into an agreement with me for employment for any specified period of time or to make any agreement with me contrary to the foregoing.

(DSMF ¶5). Plaintiff admitted that he never received anything signed by the President of Alliant Technologies that gave him any other protection other than employment at-will (DSMF ¶6). As such, Plaintiff cannot assert that the Company violated some phantom obligation to not terminate his employment notwithstanding its view that his performance was inadequate.

The foregoing arguments demonstrate that Plaintiff cannot remotely establish that his termination was caused by disability discrimination, or that his termination was pretextual. As noted above, Plaintiff candidly admitted that he has no idea why Defendant terminated his employment. The well-established precedent cited in Defendant's moving brief demonstrates that in light of these facts, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claims.

**4. Plaintiff cannot establish a failure to accommodate claim.**

Plaintiff's own testimony precludes him from establishing a failure to accommodate claim. Plaintiff's opposition completely ignores his glaring admission that <u>none</u> of his medical providers told him that he needed 30 days off from work due to his medical condition:

> Q:   …None of your medical providers told you that you needed thirty days off from work due to your medical condition, right?
>
> A:   That's correct. I requested it so we have time to work things out.

(DSMF ¶ 30). Indeed, from late 2005, when Plaintiff notified his supervisors that his medication was effectively treating his condition, Plaintiff did not feel he needed any accommodation in order to do his job (DSMF ¶ 13). Accordingly, Plaintiff's request for leave was not "for a disability" as required by law, and his claim fails on that basis alone.

In support of this failed claim, Plaintiff again relies upon wholly irrelevant case law. For example, Plaintiff cites precedent holding that short-term disability can be a reasonable accommodation, and that a request for reasonable accommodation can be made in "plain English." This does not alter the fact that Plaintiff cannot sustain a claim for failure to accommodate because his reasonable accommodation was not for his disability. <u>Hohider v. UPS</u>, 574 F.3d 169, 186-87 (3d Cir. 2009)(in order to state *prima facie* case, the employee must

request accommodations or assistance <u>for his or her disability</u>). As such, Defendant respectfully requests that Defendant's failure to accommodate claims be dismissed.

## CONCLUSION

For the reasons set forth above, and in its moving paper, Defendant Alliant Technologies respectfully request that this Court grant their Motion for Summary Judgment in its entirety.

Respectfully submitted,

<u>*s/* Ravi Sattiraju</u>
Ravi Sattiraju, Esq.
THE SATTIRAJU LAW FIRM, P.C.
116 Village Blvd., Suite 200
Princeton, NJ 08540
Tel: 609.799.1266
Fax: 609.799.1267
rsattiraju@sattirajulawfirm.com
Co-counsel for Defendant

Date: April 26, 2010